# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**ROGER RAMIREZ,**

    **Plaintiff,**

                                            **CASE NO.:**

**v.**

**GTE FEDERAL CREDIT UNION, d/b/a
GTE FINANCIAL**

    **Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Roger Ramirez, by and through undersigned counsel, brings this action against Defendant, GTE Federal Credit Union, d/b/a GTE FINANCIAL, and in support of his claims states as follows:

## JURISDICTION AND VENUE

1. This is an action for damages and for declaratory relief, for violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e et seq.

2. This Court has subject matter jurisdiction under 28 U.S.C. § 1331. This Court has pendent jurisdiction of the state law claims.

3. Venue is proper in this district, because all of the events giving rise to these claims occurred in Hillsborough County which is in this district.

## PARTIES

4. Plaintiff is a resident of Hillsborough County, Florida.

5. Defendant operates a credit union in Tampa, in Hillsborough County, Florida.

## GENERAL ALLEGATIONS

6. Plaintiff has satisfied all conditions precedent, or they have been waived.

7. Plaintiff has hired the undersigned attorneys and agreed to pay them a fee.

8. Plaintiff requests a jury trial for all issues so triable.

9. At all times material hereto, Plaintiff was an employee of Defendant within the meaning of Title VII.

10. At all times material hereto, Defendant employed fifteen (15) or more employees. Thus, Defendant is an "employer" within the meaning of Title VII.

11. At all times material hereto, Plaintiff was an "employee" of Defendant within the meaning of the FPWA, Section 448.101(2), Fla. Stat.

12. At all times material hereto, Defendant was an "employer" within the meaning of the FPWA, Section 448.101(3), Fla. Stat.

## FACTS

13. Plaintiff was employed by Defendant from July 2019 to September 2020 as a Consumer Loan Underwriter II.

14. Plaintiff is a Hispanic male.

15. Thus, Plaintiff is a member of a protected class, and on account of his protected status, Plaintiff benefits from the protections of Title VII.

16. Plaintiff performed the job for which he was hired in a satisfactory manner.

17. Plaintiff's supervisor was White and assigned Plaintiff with tasks that had nothing to do with his job as an Underwriter.

18. Plaintiff tried to complete those tasks but doing so effected his performance for his job-related tasks resulting in lowered evaluation scores by his White supervisor.

19. Plaintiff complained that he was being treated differently but Defendant took no remedial action.

20. Instead, Defendant's Human Resources contacted Plaintiff and told him his raise and bonus were being withheld until an evaluation was completed.

21. By withholding his raise and bonus, Plaintiff felt coerced into signing a poor performance evaluation that was due to his White supervisor's assignment of menial non-job related tasks to Plaintiff.

22. Plaintiff took his complaint to the Vice President of Human Resources ("VPHR") and pointed out that, for instance, out of a team of ten employees, he was the only one assigned to do a certain project but that the project was purposefully omitted from the evaluation.

23. The VPHR investigated and Plaintiff was proven correct such that his evaluation was corrected and his supervisor apologized. However, the supervisor did not stop treating Plaintiff poorly.

24. The supervisor continued to assign Plaintiff to special projects which would interfere with Plaintiff's ability to meet performance goals. By way of example and not limitation, the supervisor would assign Plaintiff to train new hires on how to meet their own goals.

25. Thereafter, the supervisor gave written warnings to Plaintiff for trivial matters such as being only minutes late.

26. The supervisor also turned down Plaintiff's shift bids.

27. Thus, Plaintiff was subjected to disparate treatment on the basis of his race and for having complained about the disparate treatment he received from his supervisor.

28. Plaintiff complained about this disparate treatment to Defendant by making complaints to the VPHR.

29. Defendant took no remedial action in response.

30. On or about September 30, 2020, Defendant retaliated against Plaintiff for invoking his rights under Title VII by terminating Plaintiff's employment.

31. Simultaneously, during his tenure with Defendant, Plaintiff became aware of Defendant's violations of the Credit Union Share Insurance Fund Parity Act and its regulations. 12 U.S.C. § 1751 et seq., and 12 C.F.R. §723.1-723.7.

32. At all times material hereto, Defendant was a credit union within the meaning of 12 U.S.C. § 1751 et seq., and 12 C.F.R. §723.1-723.7.

33. As a credit union, Defendant had a legal obligation to meet the obligations contained in the laws for credit union regarding lending practices.

34. Many of the Defendant's practices violated fair lending practices, outright discriminatory treatments, negotiated bribery, and misappropriation of member owned funds.

35. By way of example and not limitation, Defendant would override Plaintiff's denials of loan applications without justification based solely on the Retailer so that certain car dealerships never had their loan applications denied. The exceptions granted did not adhere to consumer lending regulations such as no income verification, no formal interview, or employer verification, overlooking escalating unsecured debts, recent bankruptcies, foreclosures, thin credit files, and so forth.

36. However, in contrast to those loans originating from preferred dealerships, some GTE members that receive less than favorable loan decisions are those that receive government assistance or against any applicant who, in good faith, exercised his or her rights under the consumer credit protection act to apply for a loan in contravention of Regulation B of the Fair Lending Act.

37. Plaintiff made several complaints about Defendant's violations. For instance, Plaintiff complained to James Smith in December 2019, Michael Wessel

in January 2020, to Marian Ringuette in February 2020, and to Joshua Lansing in April 2020.

38. Defendant took no action as to Plaintiff's complaints.

39. Instead, Defendant seized the global coronavirus pandemic to furlough only Plaintiff from his team on or about April 20, 2020.

40. By July 2020, Defendant informed Plaintiff that his furlough would be indefinite.

41. On September 30, 2020, however, when other businesses were looking to reopen, Defendant informed Plaintiff that he was terminated.

## COUNT I – TITLE VII VIOLATION
## (RACE DISCRIMINATION)

42. Plaintiff realleges and readopts the allegations of paragraphs 1-10 and 13-30 of this Complaint, as though fully set forth herein.

43. Plaintiff is a member of a protected class under Title VII.

44. Plaintiff was subjected to disparate treatment on the basis of his race, including but not limited to terminating his employment.

45. Defendant knew or should have known of the disparate treatment suffered by Plaintiff, and failed to intervene or to take prompt and effective remedial action in response.

46. Defendant's actions were willful and done with malice.

47. Plaintiff was injured due to Defendant's violations of Title VII, for which Plaintiff is entitled to legal and injunctive relief.

**WHEREFORE**, Plaintiff demands:

a) A jury trial on all issues so triable;

b) That process issue and that this Court take jurisdiction over the case;

c) An injunction restraining continued violation of Title VII by Defendant;

d) Compensation for lost wages, benefits, and other remuneration;

e) Reinstatement of Plaintiff to a position comparable to Plaintiff's prior position, or in the alternative, front pay;

f) Any other compensatory damages, including emotional distress, allowable at law;

g) Punitive damages;

h) Prejudgment interest on all monetary recovery obtained.

i) All costs and attorney's fees incurred in prosecuting these claims; and

j) For such further relief as this Court deems just and equitable.

## COUNT II – TITLE VII RETALIATION

48. Plaintiff realleges and readopts the allegations of paragraphs 1-10 and 13-30 of this Complaint, as though fully set forth herein.

49. Plaintiff is a member of a protected class under Title VII.

50. Plaintiff exercised or attempted to exercise his rights under Title VII, thereby engaging in protected activity under Title VII.

51. Defendant retaliated against Plaintiff for engaging in protected activity under Title VII by permitting his supervisor to continue his disparate treatment and ultimately terminating his employment.

52. Defendant's actions were willful and done with malice.

53. In terminating his employment, Defendant took material adverse action against Plaintiff.

54. Plaintiff was injured due to Defendant's violations of Title VII, for which Plaintiff is entitled to legal and injunctive relief.

**WHEREFORE**, Plaintiff demands:

a) A jury trial on all issues so triable;

b) That process issue and that this Court take jurisdiction over the case;

c) That this Court enter a declaratory judgment, stating that Defendant retaliated against Plaintiff for exercising his rights under Title VII;

d) That this Court enter an injunction restraining continued violation of Title VII by Defendant;

e) Compensation for lost wages, benefits, and other remuneration;

f) Reinstatement of Plaintiff to a position comparable to Plaintiff's prior position, with back pay plus interest, pension rights, seniority rights, and all fringe benefits;

g) Front pay;

h) Any other compensatory damages, including emotional distress, allowable at law;

i) Punitive damages;

j) Prejudgment interest on all monetary recovery obtained.

k) All costs and attorney's fees incurred in prosecuting these claims; and

l) For such further relief as this Court deems just and equitable.

## **COUNT III – RETALIATION UNDER THE FPWA**

55. Plaintiff realleges and readopts the allegations of paragraphs 1-8, 11-13, and 31-41 of this Complaint, as though fully set forth herein.

56. Plaintiff opposed and refused to participate in Defendant's violation of the Nurse Practice Act and reported the violations to Defendant, thereby engaging in protected activity under the FPWA.

57. Defendant retaliated against Plaintiff for engaging in protected activity under the FPWA by terminating Plaintiff's employment.

58. Plaintiff was injured by Defendant's violations of the FPWA, for which she is entitled to legal and injunctive relief.

***WHEREFORE***, Plaintiff demands:

    k)    A jury trial on all issues so triable;

    l)    That process issue and that this Court take jurisdiction over the case;

    m)    Judgment against Defendant in the amount of Plaintiff's lost wages, benefits, and other remuneration;

    n)    Any other compensatory damages allowable at law;

    o)    All costs, attorney's fees, and reasonable expenses incurred in prosecuting these claims, in accordance with Fla. Stat. §448.104; and

    p)    For such further relief as this Court deems just and equitable.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury as to all issues so triable.

Dated this 22nd day of July, 2021.

    Respectfully submitted,

    */s/ Brandon J. Hill*
    **BRANDON J. HILL**
    Florida Bar Number: 0037061
    Direct Dial: 813-337-7992
    **AMANDA E. HEYSTEK**
    Florida Bar Number: 0285020
    Direct Dial: 813-379-2560
    **WENZEL FENTON CABASSA, P.A.**
    1110 N. Florida Avenue, Suite 300
    Tampa, Florida 33602
    Main Number: 813-224-0431
    Facsimile: 813-229-8712

Email: bhill@wfclaw.com
Email: aheystek@wfclaw.com
Email: aketelsen@wfclaw.com
**Attorneys for Plaintiff**